v. Uniclass Technology Co., Ltd. v. Uniclass Technology Co., Ltd. All right, our next case for today is 2018-1606. ATEN International v. Uniclass Technologies. Mr. Sandell, please proceed. Good morning. You may please the court. My name is Lawrence Sandell, and I'm here on behalf of Appellant 810. With my 10 minutes of opening argument time, I first plan to address the clear deficiencies in Uniclass's invalidity proofs. Then I will address the undisputed record evidence and reasonable common meanings of claim terms that compel j-mal of infringement. As I understand the record, the district court held that for a party to say they've adequately raised a claim construction issue by implying it for the first time in a Rule 50A motion on the final day of an eight-day jury trial is unpersuasive. Why did ATEN wait so long to move for a post-testifying Daubert motion? Well, one reason, Your Honor, was because it was a little bit unclear what the opposing expert was arguing, and we needed to – we couldn't really tell them if we clarified that on cross-examination. In hindsight, of course, it probably should have been done in earlier. But I'd also make the note that as a – it was a – it certainly was a claim construction issue, in that we are asserting it's improper to assert that claims should be construed one way for invalidity and the other way for infringement. But we were not asking the court – this was not an O2 micro issue. We were not asking the court to reconstrue. This is more of, I guess, what you could call a Fingen issue, where we're asking – well, not that court in particular, but we were asking the court to say, hey, it's confusing to present dueling claim constructions to the jury. The jury will be confused by this unless they're instructed otherwise. Did ATEN or UNICLES request that the district court construe claims once disconnecting or detecting terms? For the – yes, they did in ways. Where in the record? That is – give me one minute here. And to help you, I'm looking at 1878. That's actually where I was going. So in that area, ATEN saw a plain and ordinary meeting for that. And we certainly do not change that for this larger term of disconnecting the input device from the first host, and that's, yeah, 1878 at the bottom. UNICLES there, looking at 1879, right under where the claim is listed, the court said the parties disagree on the correct construction. UNICLES urges this court to adopt the plain and ordinary meeting. Sorry, ATEN urges this court to adopt the plain and ordinary meeting. UNICLES urges this court to construe the term as breaking the direct communication pathway between the input device and the host and then establishing a direct communication pathway between the host and the emulator. Now, this is the same argument that was the so-called claim construction or interpretation that UNICLES' expert made. Mr. Dismalik? Dismalik, yes. Okay. And so he didn't use the direct communication pathway language when he was making his claim interpretation or claim construction argument, but he called it an active connection. Okay, so Dismalik explains his argument that a person of skill and merit would understand occupation to refer to physical occupation. And then he says the PRIMA-T device never looks at whether there's actually a cable in the port. It simply waits for a message from the other device. That's fact testimony. It is fact testimony, and we do not dispute that. We actually take that as an admission, Your Honor. If the question here is, you know, if we're so – So, I mean, I read you as arguing that that's testimony towards construction. Did I misunderstand? I believe you did, at least that part of it. I think actually he says, but that's not what the claim requires. So the claim requires detecting occupation, perhaps it's physical occupation. We can go with that because obviously we're on J-Mall and our burden is a little bit higher here. Let me ask you this. Does A-10 challenge that the combined CS-1762 device and its accompanying user manual together practice all the elements of the representative claims, leaving aside dates? On appeal, we don't. We've made no arguments on that on appeal. Okay, okay. We're really – on those, we are just looking at the date. Am I correct that the date stamp device manual is not of record? I couldn't find it. The device manual, I'd have to check. I believe that – Can you give me a site? Well, maybe when you come back up. I'd like to see it. As far as we're talking about it, because there are really three instrumentalities here. The first is the device itself. Everybody agrees that's 2009. The manual itself, I believe, actually would be prior art. So the real question is – I want the date stamped. The date stamped of the manual or the firm? The manual, the device manual. Okay. I don't believe that we – Maybe your opposing counsel can tell me that. But the reason you have a third piece is that I gather it's undisputed that there's at least one claim element not taught by that manual. That's correct. So it has to be found somewhere else, and it's found in the firmware. And the firmware is 2006, but we don't know if it's before. We don't know when. And the burden on that is squarely on Uniclass to decide that. And that's why we believe that the district court really erred by saying, hey, well, it was your device. It's your responsibility to tell us where it was from. But at the end of the day – Why is that a square error? Because it shifts the burden directly. It shifts the burden. It's your device. It's our device, true. But – You know when. Actually, at this point, we do not know when. I mean, this was – I believe it was 2006. The records are lost. They were in your control? I'm unaware either way. Really? 2006. I have not seen the date. Okay, let me put it this way. Isn't there an evidentiary inference? You see what I'm saying. I know. I do see what you're saying, and I do believe this is what brought the judge – Sure. What went this way. Is an evidentiary inference sufficient to prove something by clear and convincing evidence? I mean, in certain circumstances, it could be. This was an old device. This was an old device. The records of that are gone. This was not developed – the date was not developed on discovery. This was not somewhere where Uniclass asked for an adverse inference because we asked them, and then we didn't have this information. This was a thing where there wasn't even – there was no corroboration. They just decided that it was available on this date. What's the story on this Chinese document referenced as Exhibit 1758? I gather not admitted into evidence. Yeah, so my recollection is that there was theoretically some evidence of the date that was never submitted into the record that was held back. Our objection to that document was that it was in Chinese. I do not speak Chinese myself, and I do not know what was in it. Theoretically, that might have been a corroborating document. We don't know that. It's outside of the record, and I believe it's improper for the court to consider that. And it's still not even in the appendix, notwithstanding that it wasn't before the jury. It wasn't before the lower court at all. And it's really a part of Uniclass's burden to prove that it was actually predating, and that element of proof was missing, and there wasn't any asking for any sort of adverse inference. Well, when you say it could have been corroborating, I mean corroborating of what? You've got a witness that testified that this firmware was created in 2006. He couldn't identify a month. I mean the cross-examination blew my mind. I thought it was actually quite a bold choice, given that he hadn't given a date in direct, to ask him a series of questions which could have allowed him then to correct his earlier mistake, but he didn't. He didn't correct his earlier mistake. Yes or no, do you know what month? Nope. Yes or no, do you know what day? Nope. And so there it stood after cross-examination, and I was baffled on redirect, how they didn't stand up and rehabilitate him and have him provide a month or a day if he knew of one. I mean because you guys had telegraphed it really clear after that cross-examination that you were challenging whether or not this was prior art, and yet he didn't do it. So to be honest, I think that you sold your case a little short when you say maybe this document could have corroborated. There was no testimony to corroborate. That's true. That's true, Your Honor. I appreciate you saying that, and we did emphasize that point for the district judge that the date was just simply not there. But going back to infringement, if you don't mind, I'd like to ask you where it is that you raised with the lower court a problem with Mr. – tell me how to say his name again. Desmelek. Desmelek's testimony vis-à-vis direct or indirect connections. Where did you raise any sort of problem with the district court about that on infringement? Talking specifically about that, we did not raise that when it comes to the interpretation of the claim. If we put aside this whole dueling claim construction problem where you're telling the jury there are two constructions, there's actually no need. Why would you put aside that? That's improper. Well, no, we do believe it's improper, absolutely. But you didn't object to it, so there's an O2 micro problem with that. Well, it's an O2 micro problem if we're asking the court – if it's an O2 micro problem if we're asking – See, here's my problem. My problem is you have a scenario here which, as well as you did on anticipation, you did equally poorly on infringement. I'm just going to be blunt with you. You have a scenario in which you have what are clearly dueling claim constructions being argued for validity and infringement. You've got an expert on the other side going through a spec and prosecution history. I fell off my chair when I was reading all of that because it's completely improper. But you allowed all of that to go to the jury. Markman says that should all be done by the judge. What the plain and ordinary meaning is should be decided by the judge. It may be a fact question, but it should be decided by the judge. But you didn't object to it. You allowed it to go to the jury, and now that you lost the jury verdict, you're complaining about the fact that it happened. And that's the problem for me is that you don't get to do that. The judge is exactly right. You never raise those objections at any point in time, which would have allowed him to avoid this mistake, which is dueling claim constructions being presented to a jury and a jury deciding them. Your Honor, I see the dueling claim construction problem mostly in the new trial request. But when it comes to JMAW, and this is where we believe that Finjen is very strong, is there still must be some substantial evidence underlying infringement. Yes, but the problem for you is the claim construction was plain and ordinary meaning. And your argument is that his testimony doesn't comport with what the plain and ordinary meaning should be. And what you acknowledge is there's apparently two different interpretations or understandings of the plain and ordinary meaning. And your real issue is the district court said when they rejected Uniclass' claim construction at the hearing that they're trying to insert the word direct in there and that the plain and ordinary meaning should be broader than that. Problem is there was no instruction given to the jury that the plain and ordinary meaning of connected is broader than just a direct connection. And you knew that after the testimony, you wrote it up very well for us on appeal, but you didn't object to it or present it to the court. And so my problem is, hey, I think you're probably right on everything you're saying, but you didn't preserve it below in a way that presents it to us on appeal. That's my problem with your infringement argument. I guess my response again, Your Honor, would be when it comes to the dual and plain construction, I think that's one thing. And on the other side, if we're just looking at J-Mall, there's no obligation necessarily to object to an expert giving an interpretation that we believe is unreasonable. There's really no basis for us to object during trial. We say, hey, their expert is saying that this is a common meaning and we think that's unreasonable is a common meaning. We can't stand up in court and say, hey, that is not a common meaning. But actually, you can. You can go to the court and say this is an issue of claim interpretation that they're trying to present fact expert testimony or expert opinion on, and that that's not the role of the expert. That has to go to the court. You can and should. I think that's actually the only way to do what you're seeking to do. You're into your rebuttal time. Let me let you save it, because I don't want you to not have any rebuttal time after we argue. All right. Mr. Pia, please proceed. Thank you, ma'am. Please the court. My name is Joseph Pia, and I represent the Appalese. Let me jump into the CS1762 device and speak to you for a minute about corroboration. The big question is whether or not this firmware dates back to before the critical date. And there's no question that Mr. Desmelech knew what the critical date was and testified as to that. Where did he do that? He did that in Appendix 9302 through 9303. 9302. So where does it say on 9302 that he understood that the critical date was July 24th? It says it between lines 17622. I'm sorry. I don't have any lines 17622. Oh, sorry. Let me look at this. I'm on page 9301, I think. Is that what you just directed me to? 9302. Okay. Bottom carryover. I have it now. Okay. So if we look at the bottom of the page, line 22, through the next page, line 3. It indicates he understands the critical date. Yes, got it. He knows exactly the critical date. Yes. And then where did he testify that this firmware preexisted that critical date? So in his testimony, at Appendix 9313. I'm there. He's referring to his demonstrative exhibit, and he takes some great pains to say this is... I don't see any great pains, but perhaps that's just attorney embellishment and I'll overlook it. Why don't you tell me what he says? Quote, on the right-hand side is a screenshot from a test tool. I skipped a couple words there. A test tool running on the PC, which identifies information about connected USB devices. In this case, the USB device that's connected has identified itself with the vendor ID that corresponds to A10 International. It says the manufacturer is A10 Advanced Tech Incorporated, and the product is CS1762 with a version 1.4.132. That's the firmware version being reported by the device. I then looked on the Wayback Machine to find when that firmware update came out, and the last time it was changed, and that was in 2006. So this firmware is prior art firmware operating on this. Is everything in 2006 prior art? What's that? Is everything in 2006 prior art? No, but he just testified that he knew exactly what prior art meant for this particular product. No, he said he understood what the prior art or the, actually, what did he say? The critical date. No, he didn't use the words critical date. He said the patent was filed on July 24th of 2007. I actually invented it a little sooner than this would be a year earlier, or July 24th, 2006. Right? So he doesn't use the word critical date. Am I wrong about that? He doesn't use that word? No, and he doesn't even actually use the word priority date, does he?  That's not actually correct either, is it? We don't have any information in this record about precisely when it was invented, right? We have the filing date. Yes, so that's the filing date. That's not when it was invented. So your non-lawyer expert made a number of statements, but what he doesn't say is that I understood this to be the critical date, and I understood that everything I looked at in order to be prior art had to be before that date, and that's not surprising. He's not a lawyer. Correct? Correct. So he has a confusing testimony about dates of invention, and then he says this came out in 2006, thus it is prior art. Not everything in 2006 is going to be prior art when the critical date is July 24th. So I don't see where it's clear to me that this expert understood that it had to be prior to July 24th, 2006, for him to consider it as prior art. Okay, I do. When he talks about the question that was asked to him on Appendix 9302, so let's look at the 141 patent. When is the priority date of the 141 patent? That's the question that he responded to. Well, he says the priority date was July 21st, 2007. That's not actually even right, is it? Well, no, he says on the next page, 2006, when it was filed on July 24th, 2007. And then he says, indeed, it is a little sooner than this would be a year earlier, or July 24th, 2006. But what bothers me is what bothers Judge Moore. Okay, I'll accept that he knows the critical date is July 24th. Well, why doesn't he say, he says, and that was in 2006, so it's prior art. Throughout his testimony, he says he uses the words prior art. Right. And there's extensive testimony on what prior art means, including his own that he just said the earliest invention date for the filed patent is one year before that. Right. And so the reasonable inference is when he uses the word prior art, he's talking about something before that date. With all due respect, I don't know if that's a reasonable inference for a non-lawyer. I'll run it by my kids tonight. They're really smart, and I'll see what they say. But then if you come back to the cross-examination, which Judge Moore referred to when he was given an opportunity to fill in a date that he hadn't done on direct, he rather conspicuously didn't fill it in. He was asked about month and day, and he said he never testified to that. You're right, Your Honor. What he did testify to is that he had looked at the Wayback Machine and found the specific date of the last update, which was July 4th, 2006, prior to the critical. Where's that July 4th reference? I don't think he mentions that. Yeah. I'd like to see that. It actually is in the—he may not have—I'm sorry. He may not have said that. That is in the exhibit that was referenced that was not before the court. It says July 4th. The Chinese thing? It is in Chinese, and these parties all speak Chinese, and we had translators for all of the factors. Then why didn't you introduce—it's not in the record. It is not in the record. Yeah. You didn't even put it in the appendix, either. I don't speak Chinese. Can I ask you— I read dates, though. One of the things that Judge Gilford— No, the Chinese months? Numbers. Oh, number dates. One of the things that Judge Gilford said was that your witness got, at least within the year, and then he gave some significance or thought the jury could give some significance to the silence on the specifics from the other side. What legal authority—I don't remember seeing citation of legal authority for something that certainly can be true in some circumstances, right? Silence can sometimes speak. But here, what legal authority do you have to offer for giving enough weight to the absence of information from the other side that might allow the jury to find your side to have met its clear and convincing evidence burden? By silence, I don't have a case. By corroboration using all of the facts that were in the record at the time, which included a 10-zone user manual that the CEO of A10 testified had been released in 2004, the testimony of the witnesses, and his own recollection, in this case, as to the priority date, that should be considered corroboration. And what is notably absent is— But the user manual doesn't refer to the particular firmware version that's relied on for this missing element. That's correct. And what the district court says is it's notable that A10, when it clearly has this product, it created this product and invented the patent and the firmware, did nothing to rebut it. Did you ask in discovery? Yes. You know, counsel said, geez, it's so old. We don't—you know, they're old records. Did you ask for those records? Yes, we asked for—we had broad, but sufficiently narrow discovery requests to pull any type of prior art product that would have been a 10-zone product. Did you get anything or any objection saying we don't have that sort of thing? There were standard objections given, but we never obviously got that device. In fact, we had to obtain that device through, I think it was, Amazon. When a judge says the plain meaning of a term is going to apply and he's going to instruct the jury to use the plain meaning of a term, do you think it's appropriate for both parties to put on dueling experts that offer different plain meanings and for that inquiry then to go to a jury as to which of those two plain meanings the jury should credit for infringement analysis? It's a question of law. I'm not saying that's what happened in this case. I'm asking you, is it your view or understanding that the law permits the jury to decide what the plain meaning should be in a scenario where two experts testify to different plain meanings? As a matter of law, it is the court's duty to construe claims. And so if two experts, if the court says plain meaning and then expert number one says the plain meaning is direct connection and expert number two says no, the plain meaning could include both direct and indirect connection, is it really proper under the law, like under Markman, for that to go to a jury and for a jury to figure that out? Infringement is for the jury to determine, and a view of the plain and ordinary meaning as to one of ordinary skill in the art is proper for experts to testify on, including intrinsic evidence where the expert needs to be. But it still has to be decided by the court, correct? If there is dispute as to claim scope, that should be decided by the court. The one exception would be it is acceptable for the defendant, in this case Uniclass, to rely on the scope of the claim as testified to by A-10 for the purposes of invalidity. And that's what the district court pointed out in this case, is that Mr. Desmelech was relying on A-10's scope of the claim for the purposes of invalidity and only really used that language, claim construction, I'm adopting or using the court's claim construction. Actually, he never said the court's claim construction, the correct claim construction.  No, he said you should use the correct construction, which implicit in that is there's a correct and an incorrect one. Yes, and the correct one was the court's, which was the plain and ordinary meaning. What it was not was an unreasonable one. Yes, but then he was explaining to them what the plain and ordinary meaning ought to be. He pulled up the specification and the prosecution history. Especially, it was more, to me quite frankly, more offensive. And look, if they don't object, it's on them. But it was more offensive in the detecting scenario than it was in the connecting. Detecting is the other one, right? It is. That's the place where he really was walking through the spec and the prosecution history and telling them what the scope of the claim ought to be. And I just thought to myself, how can this be occurring during trial? Why is something like this going to the jury? Well, the fact witnesses were testifying as to what it meant to detect occupation of a cable, for example, in the accused device. And Uniclass's chief engineer testified that sending a message is not detecting a cable as a matter of fact, which is different than the claim scope, which would be a matter of law. And I believe this is exactly what Judge Guilford was talking about when he said, I needed to let the testimony play out to see if there was any kind of a problem that could prejudice the ultimate result that the jury came to. And he said, I find no problem here. He was able to reconcile the verdict. Well, he let it play out, but then in his opinion post-trial, or at least post all evidence being introduced, he said they didn't raise it. They didn't raise this argument. If this is a problem with claim construction, and if your expert went too far in that he was telling the jury how to construe the claims, and then the problem was on them because they didn't raise it, at least with regard to infringement. They may have raised it with regard to invalidity, but they didn't raise it with regard to infringement. Is that your understanding of his holding? That is my understanding of the holding. And I believe that the court was considering A-10's closing argument where it says, quote, now for the other A-10 patents, he again, referring to Mr. Desmelech, is trying to confuse you. He testified about what he thinks A-10's claim constructions are in order to offer opinions on invalidity under those interpretations. But as you heard in the jury instructions, the judge gave you, which were very clear, there's only one claim construction in this case, and that comes from the court, not from Mr. Desmelech, again trying to confuse you, end of quote. They created their own qualifying jury instruction in that closing statement. They told the jury, don't rely on any construction other than the court's. They clearly knew that this was an issue. They actually knew way before in the expert report. Well, to be clear, that's not, their argument wouldn't be curative if they had really raised an objection to an actual problem. The court would have to instruct the jury to have it be a curative, I mean, if you're suggesting there was no ultimate prejudice by what occurred because they explained to the jury not to rely on it, I don't think that would cure an actual problem if there were one. I think the court would be obligated to cure it. Yes, it does do two things, though. It shows that they were on express notice of the issue and should have raised it if they truly thought it was an issue. But it also shows that they weren't that worried about it. Well, until they lost. Until they lost. But they weren't worried about it in respects to invalidity, in which, I'm sorry, with respect to infringement. They were concerned with it with respect to invalidity under their 50A motion. Okay. Your time is up. Let's give your opposing counsel his rebuttal time, and then we'll see you again for the next appeal. First off, to answer the question about the manual, if you look at appendix page 9303, there's some testimony on the date of the manual in 2004. I'd also just really like to raise the two main points. One is that although the objection was raised later, the court explicitly said that these post-testimony were fine, and that is on appendix page. What I was asking you for is the date stamp manual. Oh, okay. I do not believe that is in the record. I apologize, Your Honor. So in that page. That page gave rise to that question. Okay. Thank you. The court specifically said, would you call this a post-testimony Daubert hearing on appendix page 9131? And continuing on in 9132, the court said, there's nothing wrong with that as far as I'm concerned. I'm just wondering. And I believe that gives at least some reason why our objections were made a little bit later and does help with that. I'd also just like to point out, if we kind of put ourselves in the world where no objection was made at all, or if you assume that that was way too late, I still believe that the JMAL issues are worthy of hearing and actually did not need to be raised. And, again, I'm referring to the Fingen case on page 1306. And this court had said that under such circumstances, the question for the trial court is limited to whether substantial evidence supports the jury's verdict under the issued construction. The issued construction being plain and ordinary meaning there. And then in that case, the court looks to whether or not it was reasonable for the jury to interpret in a specific manner. And then finally, I would just like to point out, the way that Uniclass has most recently at least interpreted the detecting occupation is available on page 48 of their brief. And it says, plain and ordinary meaning of detecting occupation is to identify physical occupation of the port by a cable without necessarily detecting the flow of messages. And we take that to be a concession that, although it's physical occupation that must be detected, that particular mode, detecting the flow of messages, is not excluded under their interpretation. And following that, it is, we believe, that the admission that master-slave status is determined by assessing the flow of messages is actually admission that should compel a jamal of infringement of the 289. Okay, Mr. Sandell, the case is taken under submission. Our next case, your Mr.